THIBODEAUX, Judge.
Defendant, Billy Ray Smith, Jr., was indicted for attempted second degree murder of Paula Leverette in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1A(1). After his first trial ended in a mistrial, defendant was found guilty by a 12 person jury on May 21, 1992. On December 1, 1992, the defendant was sentenced to serve a term of 480 months at hard labor with the Louisiana Department of Corrections. Defendant now appeals his conviction and sentence alleging seven specifications of error relating to both his conviction and sentence. For the following rea *622 sons, we affirm both his conviction and sentence.

FACTS

Paula Leverette, the victim, went with her cousin to the Oasis Club in Vernon Parish, Louisiana, on Friday evening, August 30, 1991, where she met a group of friends. At one point, she left to go to another club a short distance from the Oasis, but returned later and stayed until closing time, approximately 2:00 a.m., on August 31, 1991.
While at the Oasis Club, she met the defendant and his two companions, Edmond “Boo” Buxton and Brad Bjorklund. She decided to leave with them.
The defendant drove to a mobile home off Three Pines Church Road in Beauregard Parish, where Brad Bjorklund lived. All four of them, including Paula, entered the mobile home, and Paula went into a bedroom with the defendant where she had sexual intercourse with him.[1] The evidence indicated that Edmond “Boo” Buxton may also have had sexual intercourse with Paula later that morning. Before daylight, Paula Leverette left the Bjorklund trailer with the defendant and Edmond “Boo” Buxton on the pretext that they were taking her home. Brad Bjorklund was asleep in the mobile home and did not go with them.
Instead of taking Paula home, the defendant proceeded to Louisiana Highway 26 (the DeRidder/Oberlin Highway), where he turned onto a gravel road in the “Deer Creek” area and stopped.
Buxton got Paula out of the car. Buxton pushed her down the woods road, with the defendant walking in front of her. After Paula asked to go home, the defendant turned around and stabbed her under her right breast with a shiny object.
Paula fell into a mud puddle after the defendant stabbed her. The defendant then stabbed her multiple times in the back, while Buxton encouraged him to “cut her throat.”
Paula tried to fight the defendant and received cuts, or “defense wounds,” on her hands. She was also cut severely on the right side of her face, as the photographs in evidence graphically demonstrate.
The defendant stopped stabbing Paula when she pretended she was dead. The defendant and Buxton then picked her up and threw her in the bushes. Paula moaned, and one of them began kicking her in the side to make sure that she was dead. Paula was sufficiently alert to stop making any sounds. The defendant and Buxton then returned to the defendant’s vehicle and left, thinking that Paula was dead.
Paula testified that after she was confident they were no longer in the area, she tried to get help but could not walk. Instead, she crawled as far as she could until she passed out. When she awoke, she looked at her watch and saw that it was 8:00 a.m. At that time, she walked to the nearest house to get help. Paula knocked on the door but there was no response so she fell asleep on the front porch. She awoke at 11:00 a.m. and began walking to another house to get help whereupon she met up with the mail carrier. The mail carrier summoned help and an ambulance transported Paula to Beauregard Memorial Hospital where Paula spoke with officers about the incident.
Deputies of the Beauregard Parish Sheriffs Office initially attempted to arrest Bux-ton on the afternoon of August 31, 1991, at his home. After fleeing from them, he later turned himself in at the Beauregard Parish Sheriffs Office.
The defendant fled to Butte LaRose, where he called a friend and confidante, Ernest Courville, who was working offshore. He “gleefully and excitedly” described to Courville what he had done, and stated that Paula was dead — that he had stabbed her and that he had thrown the knife away.
Ernest Courville initially called the Lees-ville City Police Department, in Vernon Parish, and was referred to the Beauregard Parish Sheriffs Office. He spoke with Deputy Robert McCullough who set up a three- *623 way telephone conversation with the defendant, who was waiting by a pay telephone in Butte LaRose. Deputy McCullough monitored the conversation between the defendant and Ernest Courville without the defendant’s knowledge, and arranged for his arrest by the St. Martin Parish Sheriffs Office immediately after the termination of the telephone conversation. He was returned to Beauregard Parish, where he remained in custody pending trial.
Subsequent to the declaration of a mistrial, as a result of the “hung jury,” on April 8, 1992, a hearing was held to determine an appropriate bond for the defendant, pending retrial. On April 9, 1992, evidence was adduced establishing that the defendant talked with Ernest Courville several times following his arrest, and that Courville visited the defendant at the Beauregard Parish Jail. The defendant did not know that Ernest Courville was cooperating with the Beauregard Parish Sheriffs Office.
The defendant attempted to enlist the services of Courville to find the knife with which he had stabbed Paula Leverette, and to dispose of it; and further, to enlist the services of Courville to kill and, therefore, silence Paula Leverette. The evidence at the April 9th bond hearing, including tapes of conversations between the defendant and Courville, established clearly and convincingly that the defendant, while still in custody, conspired to complete the task which he attempted on August 31, 1991.

ASSIGNMENT OF ERROR NO. 1

Defendant alleges the trial court erred in not allowing defense counsel to refer to and display exhibits to the jury during opening statement. Defendant contends that it is within the permissible parameters of La. C.Cr.P. art. 795 to hold up an item of proposed evidence during opening statement and indicate to the jury how that item will support a defense against the crime charged.
When defense counsel avails himself of the opportunity to make an opening statement under La.C.Cr.P. art. 765(4), the statement must be confined to an explanation of the nature of the defense and the evidence by which he expects to establish it. State v. James, 459 So.2d 1299 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 600 (La.1985).
The trial judge ruled that although counsel, whether defense or state, can refer to exhibits, they cannot demonstrate them during opening statement. The state, in its brief, suggests the trial court’s determination is correct in that this evidence had yet to be introduced into evidence leaving open the possibility that they might never be introduced.
Wide discretion is vested in the trial judge in his control of the opening statement to confine it within limits. State v. Hodges, 526 So.2d 1275 (La.App. 3d Cir.1988). There is no abuse of this discretion in this case. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2

Defendant asserts the trial court erred in allowing the state’s witness to disclose- “other crimes” evidence without adherence to the safeguards of State v. Prieur, 277 So.2d 126 (La.1973). Defendant’s objection relates to the portion of Deputy McCullough’s testimony wherein he related to the jury the contents of a telephone conversation between defendant and Ernest Courville that he monitored during which the defendant made noncustodial inculpatory statements. More specifically, defendant objected to the following testimony:
“... He said that after they cut her, that they left, but she must have lived. He said that he wanted to find out the girl’s name and then he would come back. Mr. Smith stated that he was going to stay in Butte LaRose a couple of days and decide what he was going to do.”
Defendant has failed to demonstrate how this ambiguous comment constitutes other crimes evidence. Moreover, defendant was notified of the state’s intent to use this incul-patory statement at trial through the state’s Answer to Discovery and Inspection wherein it states as follows:
Any relevant written or recorded eonfession(s) or statement(s) of any nature by the defendant(s), including any recorded testimony before a Grand Jury in the pos *624 session, custody, control, or knowledge of the District Attorney is hereto attached. You are hereby informed of the State’s intent to use said confession(s) or statements) against the defendant at his/her trial or any other proceedings.
Defendant, Billy Ray Smith, made oral statements on or about August 31, 1991, from 11:58 P.M. until 12:06 A.M., to Ernest Courville via a telephone conversation between defendant, while he was at a convenient [sic] store near Butte LaRose, La., and while Ernest Courville was at his job sight [sic] on an offshore rig in the Gulf of Mexico. These statements made by defendant were monitored by Deputy Robert McCullough. A transcription of Deputy McCullough’s notes are attached to and made a part of this answer.
As the answer indicates, a complete transcription of Deputy McCullough’s notes was attached to the state’s answer and the summary included the particular portion objected to by defendant, specifically:
Billy Ray stated that he wanted to find out the girls [sic] name and then he would go back.
Therefore, this statement did not constitute “other crimes” evidence. Furthermore, defendant was given prior notice of the state’s intention to use this inculpatory statement. As such, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3

Defendant argues the trial court erred in denying his motion for mistrial based upon the court’s denial of his request for transcripts of the testimony of the state’s witnesses from a prior trial of the defendant. The record reflects that on April 30, 1992, defendant filed a motion for transcript which was denied. Again, on May 12, 1992, defendant filed a motion for reconsideration, which was likewise denied. In each motion, defendant requested that payment be ordered from the Criminal Court Fund for the Thirty-Sixth Judicial District. Apparently, the defendant could have ordered such transcripts as were needed and could have paid for them from the Indigent Defender Fund, but failed to request them. In denying defendant’s request, the trial judge stated:
Well, all right, Mr. Jones, my ruling on those transcripts was that the transcripts are not to be provided to you out of the fund source that you asked for. The Indigent Defender Board provides funds for the hiring of counsel and for extraordinary expenses in connection with the preparation of a case. It is not my fault that you failed to apply to the appropriate fund resource to seek these funds to get what you are asking for.
As I have stated to you before and I will state on the record again, Mr. Burton has the right and has done so. He’s ordered certain transcripts that he wanted and he’s paid for them. I’m not — the Court is not going to pay for them, and the — he has also made those available to you. The fact that he didn’t order this transcript is something that may be of disadvantage to you, but you had the opportunity and the resource, you just did not seek it right.
In his brief, defendant takes issue with the trial court’s ruling and argues that a chilling effect will occur if the only manner of obtaining transcription and/or expert witnesses will be to lower the fees received by defenders in order to pay collateral costs. Defendant cites Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) relying on the United States Supreme Court’s holding that an indigent is entitled to a transcript of prior hearings when needed for an effective defense. In determining need, the court relied on (a) the value of the transcript to the defendant in connection with the trial, and (b) the availability of alternative devices to provide the same information.
In Britt, the defendant’s conviction was affirmed under facts quite similar to those in the instant case. The defendant’s first trial ended in a hung jury and the second trial, which occurred approximately a month later, was before the same judge, with the same counsel and court reporter. In Britt, the court found that the court reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel would have made a request.
Likewise, in the instant case, the Thirty-Sixth Judicial District Court is a single-judge *625 district, and the same court reporter serves the court in all matters before it, whether criminal or civil. Therefore, the identical service described by the court in Britt would have been available for defense counsel, had he requested it, as was a complete transcript paid for by the Indigent Defender Board. Consequently, adequate alternatives were available to the defendant.
Furthermore) defendant has not sufficiently demonstrated how he was impeded by the lack of a transcript of Dr. Harris’ prior testimony. Defendant asserts that the most effective impeachment is one in which the witness is confronted with previously transcribed testimony. However, during defendant’s second trial, defense counsel was allowed to fully cross-examine Dr. Harris to ascertain whether Paula Leverette simply volunteered the fact that she had not been raped or whether that information was ascertained in response to a question by staff in the emergency room at Beauregard Memorial Hospital in DeRidder. Moreover, even if defense counsel’s efforts to impeach Dr. Harris were hampered by the lack of transcript of her prior testimony, there is little, if any, significance to this line of questioning and, hence, no prejudice to the defendant. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. A

This assignment of error pertained to the state’s introduction of photographic depictions of the victim’s injuries. It was not briefed and is, therefore, considered abandoned in compliance with Uniform Rules— Courts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 5

Defendant next contends the trial court erred in not allowing into evidence defense Exhibit C, a knife obtained from a co-defendant, Edmond “Boo” Buxton. In his brief, defendant alleges this evidence was offered to support the proposition that the crime was actually committed by Buxton.
Deputy John Yerby testified that on August 31, 1991, at approximately 10:55 p.m., Bobby Maddox, a neighbor of Edmond Bux-ton, came into the Beauregard Parish Sheriffs office to turn over a knife that Buxton had left in his custody. Mr. Maddox testified that Buxton came to his house because he knew the police were looking for him. Bux-ton told Mr. Maddox that he did not want to go to the sheriffs department with the knife because he had two days left of his probation.
Deputy Yerby testified that there was no evidence to connect that knife with the stabbing of Paula Leverette. However, the knife was submitted to the Southwest Regional Crime Lab for analysis as a normal procedure employed by the Beauregard Sheriffs Office in any case of this nature. Faith O’Meara, a serologist for the Southwest Louisiana Crime Lab, testified that she was unable to find any blood on the knife.
Relevant evidence is defined in La. C.E. art. 401 as “... evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” However, in order for demonstrative evidence to be admissible, a foundation must be laid to establish that it is more probable than not that the object is one connected to the case. State v. Sam, 412 So.2d 1082 (La. 1982); State v. Jones, 587 So.2d 787 (La.App. 3d Cir.1991), writ denied, 590 So.2d 78 (La. 1991).
In the present case, the knife. was exhibited to the jury on several occasions, specifically, during the testimony of Paula Leverette, Bobby Maddox and Faith O’Meara. The trial court simply refused to formally admit the knife into evidence since no evidence had been presented linking the knife -with the crime. In fact, Deputy McCullough testified that the defendant told Ernest Courville during the monitored telephone conversation that he had thrown the knife away. The ruling of the trial court was correct in that the evidence fell far short of the “more probable than not” requirement. This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 7

By these assignments of error, defendant argues the trial court erred in imposing a *626 sentence more excessive than that allowed by the Louisiana Sentencing Guidelines and in deviating and/or departing from the designated sentence range of the Louisiana Sentencing Guidelines without stating the reasons for the departure and specifying the aggravating circumstances and the factual basis for such a departure.
The defendant was convicted of attempted second degree murder in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1(A)(1). The maximum statutory penalty for this offense is imprisonment at hard labor for not more than fifty (50) years. LSA-R.S. 14:27(D)(1). In the present case, defendant was sentenced to serve 480 months (40 years) with the Louisiana Department of Corrections at hard labor.
In State v. Sepulvado, 367 So.2d 762 (La. 1979), the Supreme Court determined that Article 1, Section 20 of the Louisiana Constitution of 1974 authorized appellate review of individual sentences for excessiveness. The court in Sepulvado, supra, found that the statutory criteria set forth in old La.C.Cr.P. art. 894.1 (1977) provided the appropriate criteria to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.
The jurisprudence clearly indicates that to constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The sentencing guidelines should be used as an aid in determining whether a sentence is constitutionally excessive as the criteria set forth in old La.C.Cr.P. art. 894.1 has been replaced by the language requiring consideration of the new guidelines.
In order to use the sentencing guidelines as an aid, the appropriate grid cell must be determined to arrive at the designated sentencing range. The grid cell is determined by the seriousness level of the offense and the criminal history index of the offender. The criminal seriousness tables of the guidelines indicate the seriousness level is “1” for attempted second degree murder. La.S.G. § 401.A. In calculating the criminal history index, the Department of Probation and Parole added the maximum of one point for the defendant’s prior misdemeanor convictions. The defendant’s prior misdemeanor convictions are as follows: simple battery, a violation of LSA-R.S. 14:35; disturbing the peace (fighting), a violation of LSA-R.S. 14:103; flight from an officer, a violation of LSA-R.S. 14:108.1; and, simple battery, a violation of LSA-R.S. 14:35. The sentencing grid indicates the designated sentencing range for the attempted second degree murder conviction is “1A” suggesting a range of 126 to 96 months of incarceration. Thus, we must determine whether the upward departure from the guidelines resulted in an excessive sentence. The sentencing guidelines set forth a method for departure from the designated sentencing range. When departing from the designated sentencing range, the court shall pronounce a sentence which is proportional to the seriousness of the offense and the offender’s criminal history, and state for the record the reasons for the departure which shall specify the mitigating or aggravating circumstances, and the factual basis thereof. La.S.G. § 209A(4)(a) and (b).
The record reflects that the trial court considered the sentencing guidelines, but found the maximum recommended sentence of 126 months to be inappropriate in light of the abundance of aggravating circumstances present. The court in giving its reasons for departing from the guidelines stated:
The sentence of the Court is that you be committed to the Louisiana Department of Corrections and confined at hard labor for *627 a period of four hundred and eighty months on the charge of Attempted Second Degree Murder of which you were convicted on May 21st, 1992.
This sentence shall be subject to such commutation as may be allowed in law and with credit for time served prior to the imposition of this sentence.
This sentence has been imposed after a consideration of the Sentencing Guideline Report prepared by the Department of Probation and Parole, which determines your Grid Cell to be 1-E under the Louisiana Sentencing Guidelines.
The Court does not believe that this is a typical case as contemplated by the Guidelines, and declines to utilize the recommended limits for sentencing suggested by them.
The maximum sentence of one hundred and twenty-six months which may be imposed thereunder is inappropriate in this case. This case was tried; the Court heard all the evidence along with the jury, and finds there to be aggravating circumstances in this case.
While awaiting trial and while still incarcerated, you solicited assistance from a friend to obstruct justice by attempting to find and destroy evidence by attempting to recover a weapon that you had disposed of before the police could locate it. Further, through the same resource, you attempted to solicit the completion of the act that you intended by having the victim in this case murdered in order that she might not testify at trial and identify you.
All of this was done without any feeling or remorse for the act which was committed. You’ve demonstrated a total lack of conscience throughout the entirety of these proceedings against you. You appear to be, to this Court, totally amoral and a serious danger to the public. A lesser sentence would truly depreciate [sic] the seriousness of your crime. The crime you committed is a truly serious offense, as the taking of a human life always is, and it’s rendered moreso [sic] by the brutality by which your victim was slashed and battered.
The Court finds totally repugnant your behavior of tossing what you assumed to be a dead body into the roadside bushes like some side of slaughtered beef and then brutally kicking the body to see if there was movement when you thought you heard a groan.
Further, the almost gleeful and excited description of your crime to the person whom you sought to have assist you in silencing the victim reveals a mind totally without moral conscience.
The Court is of the opinion that you are in need of a custodial environment to separate you from society and to protect it from your violent impulses until the seriousness of your act in this case can be impressed upon you.
You seem to have little consideration for the impact that it had on the victim’s family. The length of this sentence was determined largely by the Court’s conviction that this will be a long and difficult process.
Your behavior as a prisoner while awaiting this sentence has been disruptive and violent even in the parish jail.
Though you have written the Court expressing remorse, your claims ring hollow in light of your jail behavior. It’s the opinion of the Court that there are not sufficient mitigating circumstances present in this case to require or even justify a lesser sentence than is imposed. The harm that your actions caused certainly should have been seen and anticipated by you. I find no ground in the circumstances of this case which would tend to excuse or justify your behavior.
The senselessness of this crime demands that the greater punishment be imposed than suggested by the Guidelines in this case, and for this reason they are rejected by the Court as stated and the sentence imposed.
The record clearly reflects the presence of several aggravating circumstances as set forth in La.S.G. § 209. First, the defendant used a dangerous weapon, a knife, in the commission of the offense. Second, the defendant used actual violence in the commission of the offense and during the commis *628 sion of the offense manifested deliberate cruelty to the victim. Furthermore, subsequent to the offense, the defendant attempted to cause another (Ernest Courville) to use violence, force, or threats with the intent to influence the conduct or outcome of the criminal proceedings. Finally, the offense resulted in significant physical injury to the victim. The victim’s face and neck were slashed during the commission of the offense.
The trial judge adequately complied with the method for departure from the sentencing guidelines. Additionally, it should be noted that La.C.Cr.P. art. 894.1 clearly provides that no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines. For the foregoing reasons, these assignments of error are without merit.

ERRORS PATENT

La.C.Cr.P. art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, so prescription is not yet running. The district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La. App. 3d Cir.1993).
Defendant’s assignments of error regarding both his conviction and sentence are without merit. His conviction and sentence are affirmed.
AFFIRMED.

. During trial the victim stated she had no recollection of having sex with either defendant or Edmond Buxton.