649 So.2d 1240 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Russell Ross RUBIN, Defendant-Appellant.
No. CR94-982.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1995.
Allen Bruce Rozas, Mamou, for State of Louisiana.
Jason Wayne Robideaux, Lafayette, for Russell Ross Rubin.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
THIBODEAUX, Judge.
The defendant, Russell Rubin, appeals his conviction of second degree murder, and the denial of his Motion for Post Judgment Verdict of Acquittal.
*1241 The victim, Bernice Lavergne, and her husband, Hubert Lavergne, owned a small grocery store in Chataignier, Louisiana. Mrs. Lavergne operated the store. On November 18, 1992, sometime after five p.m., Mrs. Lavergne was killed in her store. She was shot three times and hacked with a machete that she kept in the store. That evening, Mr. Lavergne became worried when his wife had not returned home from the store by 7:00 p.m. She usually closed at approximately 5:45 p.m. in the winter months. He drove past the store and saw that her car was still there and the lights of the store were on. However, contrary to his wife's custom, the front doors were closed. He went to the town hall to see if she had gone to the city council meeting being held there. She was not at the meeting. He returned to the store. He put a .38 caliber pistol in his pocket and went to the back of the building. He found the back door open. He went into the store and found his wife's body lying behind the counter covered with blood. He unbarred the front doors, went out, took out his pistol and fired shots into the air to summon help. Then he went to a neighbor's house and called the police. The police found a machete inside the front door. Money was missing from the cash drawer, including a number of two dollar bills that Mrs. Lavergne collected. Also missing was a roll of money she kept under the counter. The police investigation led to the arrest and indictment of the defendant in connection with the murder of Mrs. Lavergne.
After a five-day jury trial beginning April 18, 1994, the defendant was found guilty as charged. On April 29, 1994, the trial court denied the defendant's motions for post-judgment verdict of acquittal and for new trial. The court imposed the mandatory sentence of life in prison without benefit of probation, parole or suspension of sentence. The defendant appeals, citing several assignments of error. One assignment has not been briefed and will, therefore, be considered abandoned. State v. Lewis, 576 So.2d 1106 (La.App. 3d Cir.), writ denied, 580 So.2d 669 (La.1991); Uniform RulesCourts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR
The defendant raises the following issues: (1) sufficiency of the evidence; (2) improper admission into evidence of a confidential informant's statement; (3) improper admission of an alleged inculpatory statement; and, (4) impermissible reference to an alleged inculpatory remark in the state's opening statement.
The informant-based hearsay testimony of one of the investigating officers, Rudy Guillory, was inappropriately allowed as evidence and violated the defendant's right to confrontation. The error was not harmless. Therefore, we must reverse, vacate, and set aside Rubin's conviction and remand for a new trial.
Assignments 3 and 4 are without merit.

SUFFICIENCY OF THE EVIDENCE
The defendant first argues that the trial court erred in not granting a post-judgment verdict of acquittal because the evidence adduced at trial was not sufficient to support a conviction. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the appellate court is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (la. 1982). It is the role of the fact finder to weigh the credibility of the witnesses. The appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations called for under the Jackson standard of review. State ex rel. Graffagnino v. King, supra. The Jackson standard should also be applied to the review of a trial court's denial of a motion for post-judgment verdict of acquittal. La.Code Crim.P. art. 831(B).
To obtain a conviction, the state must prove the elements of the crime, second degree murder, beyond a reasonable doubt.
*1242 La.R.S. 14:30.1 defines second degree murder as follows:
"A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
(3) When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance.
(4) When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law to another who subsequently distributes or dispenses such controlled dangerous substance which is the direct cause of the death of the person who ingested or consumed the controlled dangerous substance.
B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
There is no question that the manner of Mrs. Lavergne's death constitutes second degree murder under the statute. The issue before us is whether sufficient evidence was produced at trial to prove that the defendant was the person who killed her.
The defendant's conviction was based on circumstantial evidence. According to La. R.S. 15:438: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This does not override the Jackson standard of review. It is part of a conventional sufficiency review. State v. Sutton, 436 So.2d 471 (La.1983); State v. Captville, 448 So.2d 676 (La.1984).
The defendant, in brief, acknowledges that these facts were proven at trial:
"1. Russell Rubin was in the Lavergne store the day of the murder, after 3:30 p.m.;
2. Russell touched a bag of potato chips with his left thumb;
3. A month before the murder Russell Rubin was playing with the .22 caliber that was later used to shoot Bernice Lavergne;
4. Some months before the murder Russell Rubin was planning to rob the Lavergne store and he explained how he would accomplish this to an acquaintance.
5. An unidentified black male saw someone he knew as K.C. spending money, including two dollars [sic] bills, on the street, perhaps the day after Bernice Lavergne was killed; ..."
The record shows that K.C. was the defendant's nickname. Further, the evidence shows that Mrs. Lavergne collected two dollar bills in her cash drawer. The potato chip bag on which the defendant's finger print was found was on the counter when the police came in answer to Mr. Lavergne's call. No prints could be lifted from the machete because of the condition of its handle. The.22 caliber handgun with which Mrs. Lavergne was shot was found on the grounds of the Chataignier school, across the fence from the Rubin home. Two witnesses testified that they had seen the defendant with that gun.
It thus appears that the entirety of the evidence, both admissible and inadmissible, was sufficient to support a conviction. However, our analysis does not end there. For reasons which are made clearer later in this opinion, we must consider the trial errors.

INFORMANT EVIDENCE
A police officer, Rudy Guillory, was allowed to testify about information received *1243 from a confidential informant. The defense objection was overruled.
Officer Guillory testified that on December 17, 1992, he was told by the informant that he had seen someone called K.C. in Ville Platte the day after Mrs. Lavergne was killed. K.C. had a lot of money, some of which was in two dollar bills. K.C. was also acting nervous. He further testified that the informant was someone who had been a reliable informant on one previous occasion in a minor felony case. Further, the informant, from the information given, was not involved in the crime. Officer Guillory said that he did not take the information at face value, but used it as a lead. At the time he did not know that a large number of two dollar bills had been taken when the murder was committed. Two days later, another officer identified K.C. as Russell Rubin.
In State v. Wille, 559 So.2d 1321, 1331 (La.1990), on rehearing, 595 So.2d 1149, cert. denied, ___ U.S. ___, 113 S.Ct. 231, 121 L.Ed.2d 167, rehearing denied, ___ U.S. ___, 113 S.Ct. 645, 121 L.Ed.2d 575 (1992), the Louisiana Supreme Court discussed the problems of informant based hearsay:
"Admission of information received by a police officer in the investigation of a crime, on the basis that such information explains the officer's presence and conduct and therefore does not constitute hearsay evidence, is an area of widespread abuse. McCormick on Evidence Sec. 249 (E. Cleary 3d ed. 1984). Such information frequently has an impermissible hearsay aspect as well as a permissible nonhearsay aspect, and the court in determining admissibility should balance the need of the evidence for the proper purpose against the danger of improper use of the evidence by the jury. Id. The fact that an officer acted on information received in an out-of-court assertion may be relevant to explain his conduct, but this fact should not become a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. G. Pugh, Louisiana Evidence Law 429-431 (1974).
When an out-of-court statement, such as information received by a police officer during an investigation of a crime, has both an impermissible hearsay aspect and a permissible nonhearsay aspect, the issue of relevancy becomes significantly interrelated with the hearsay issue. If the nonhearsay content of the statement has little or no relevance, then the statement should generally be excluded on both relevance and hearsay grounds. Marginally relevant nonhearsay evidence should not be used as a vehicle to permit the introduction of highly relevant and highly prejudicial hearsay evidence which consists of the substance of an out-of-court assertion that was not made under oath and is not subject to cross-examination at trial.
There was no true issue in the present case as to the propriety of any action taken by Agent Harvey during his investigation of the Lopatta murder. Indeed, an investigating officer's testimony at trial (as opposed to testimony at a motion to suppress), explaining his conduct after an investigation, almost always has only marginal relevance at best. The real purpose of Harvey's testimony in the present case about the information received from Judith and Sheila Walters was to place before the jury the fact that their statements had named defendant ..." (footnotes omitted)
In his brief, the defendant argues:
"Here, the reason why the [sic] Officer Guillory began his investigation of defendant was totally irrelevant to the issue of defendant's guilt of any of the essential elements of crime. The State then uses this pretextural device to then get potentially incriminating eyewitness evidence in against the defendant, without having that evidence subject to cross-examination and with the credibility of a police officer. Irrelevant or marginally relevant evidence (reason for investigation) should not be used as a vehicle to permit the introduction of highly prejudicial hearsay evidence consisting of the substance of an assertion of criminal activity (possession of stolen money) by a declarant who was not under oath at the time of the statement and not subject to cross-examination at trial. The jury had no opportunity to evaluate the out-of-court declarant whose credibility *1244 may have been substantially less than that of a police officer, Rudy Guillory.
The hearsay testimony by Officer Rudy Guillory about information received from an out-of-court declarant served no other purpose than to show by improper evidence that defendant was in possession of two-dollar bills after Bernice Lavergne's murder. Thus, the State hoped that the jury would infer that this was evidence that the defendant was in possession of monies stolen from the Lavergne store at the time of the murder. Such an inference could only be made with the help of the hearsay testimony. This inference was referred to in opening and closing arguments by the State and were thus clearly inadmissible hearsay offered to prove the truth of the statement asserted."
The defendant's argument is correct; the hearsay testimony was more than that required to explain the actions of the police. While the state did need to show the original links of the investigative chain that led to "K.C.," aka Russell Rubin, the highly prejudicial information regarding his possession of two-dollar bills was not necessary for this point.
Nonetheless, the erroneous admission of hearsay testimony is subject to a harmless error analysis. Wille, 559 So.2d at 1332:
Nevertheless, the erroneous admission of the hearsay and irrelevant evidence does not require a reversal of defendant's conviction because the error was harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421 (La.1980); Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).
Confrontation errors are subject to a Chapman harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 684, 106 S.Ct. at 1438.
Viewing the present facts in light of this standard, there is a reasonable possibility the evidence might have contributed to the verdict. Note the analysis in State v. Hearold, 603 So.2d 731, 734 (La.1992):

Sufficiency of the Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt.1 When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which *1245 was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered along, was insufficient. Lockhard v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).
We accordingly proceed first to determine whether the entirety of the evidence, both admissible and inadmissible, was sufficient to support the conviction.

(Footnote omitted).
We have already indicated that the entirety of the admitted evidence was sufficient to sustain a conviction. Hearold dealt with the issue in this manner:

Hearsay Evidence
A hearsay statement is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. 5 John H. Wigmore, Evidence in Trials at Common Law § 1364 (Chadbourn rev., 1974); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, ¶ 800[04] (1991); La.Code Evid. art. 801(C); State v. King, 355 So.2d 1305 (La.1978). In the present case much testimony by the officers, consisting of statements by out-of-court declarants, was offered for the purpose of showing the truth of the statements.
On direct examination concerning his investigation of defendant and Costin, Officer Benjamin testified that "[w]e had received information that Mr. Costin and Mr. Hearold were involved in narcotics dealings in the eastern part of the parish." Defendant objected and moved for a mistrial on the basis of hearsay and other crimes evidence. The trial judge ruled that the statement was not other crimes evidence because it referred to the criminal transaction that was the subject of the trial. The judge further ruled that a statement containing the immediate information which prompted the officer's investigation was admissible to explain the officer's conduct.
Law enforcement officers may not testify as to the contents of an informant's tip because such testimony violates the accused's constitutional right to confront and cross-examine his accusers. State v. Banks, 439 So.2d 407 (La.1983) (officer's testimony that an informant told him defendant was standing on a particular street corner waiting to buy ten bags of heroin from a New York dealer was inadmissible and prejudicial hearsay); State v. Thompson, 331 So.2d 848 (La.1976) (officer's testimony that an informant told him the defendant committed the armed robbery was inadmissible hearsay and was prejudicial because it directly related to the guilt of the accused); State v. Murphy, 309 So.2d 134 (La.1975) (officer's testimony that a confidential informant told him the defendant was one of the perpetrators involved in the armed robbery was inadmissible hearsay and the erroneous admission was not harmless because it impermissibly bolstered the testimony of two victims who identified the defendant as one of the robbers).
Moreover, as to any exception to the hearsay rule based on an officer's testimony regarding information which immediately prompted an investigation, this court pointed out in State v. Wille, 559 So.2d 1321, 1331 (La.1990), that the issue of relevancy is significantly interrelated with the hearsay issue. The fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but may not be used as a passkey to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. George W. Pugh, Louisiana Evidence Law 429-31 (1974).
Generally, an explanation of the officer's actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called "explanation" involves a direct assertion of criminal activity against the accused. The present case was tried before the Wille decision, but the point cannot be overemphasized. Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay *1246 evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
Here, the reason why the officer began his investigation of defendant was totally irrelevant to the issue of defendant's guilt of any of the essential elements of the crime. Irrelevant or marginally relevant evidence should not be used as a vehicle to permit the introduction of highly prejudicial hearsay evidence consisting of the substance of an assertion of criminal activity by a declarant who was not under oath at the time of the statement and not subject to cross-examination at trial. The jury had no opportunity to evaluate the out-of-court declarant whose credibility may have been substantially less than that of a police officer testifying in full uniform. The hearsay testimony by Officer Benjamin about information received from an out-of-court declarant served no other purpose than to show by improper evidence that defendant was a drug dealer and was thus clearly inadmissible hearsay offered to prove the truth of the statement. Moreover, the officer's testimony went far beyond the scope of the question about the substance of the investigation, and the officer throughout the trial utilized a series of unresponsive answers to get improper and damaging hearsay evidence before the jury.13

(Footnote omitted).
Id. at 737-738.
The court concluded:
We therefore conclude that the statements were inadmissible hearsay evidence, the admission of which was substantially prejudicial. Because we cannot say beyond a reasonable doubt that the jury did not rely on the improper hearsay evidence in determining that defendant was guilty of intending to distribute the drug he possessed, the erroneous admission of the hearsay evidence was not harmless beyond a reasonable doubt. Yates v. Evatt, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); State v. Gibson, 391 So.2d 421 (La. 1980).
Id. at 739.
The Wille court reached an opposite result, but it did so because of the state's strong case against the defendant. The Hearold case used the same test, but once the inadmissible hearsay elicited by the state was stripped away, the evidence was insufficient to sustain the defendant's conviction. The current set of facts, while not as strong as the state's case in Wille, is stronger than that in Hearold. However, after eliminating the erroneously-admitted hearsay from the state's case, it is doubtful there is still enough admissible evidence to support the defendant's conviction beyond a reasonable doubt. It was clearly an error for the trial court to allow the hearsay from the confidential informant into evidence, and the error was not harmless.
The trial court read the robbery-murder provisions of La.R.S. 14:30.1, subd. A(2) to the jury at the beginning of trial, along with the specific intent provisions of 14:30.1(1). The state mentioned robbery-murder again in its opening statement. The state did not argue the robbery-murder element in its closing argument, but during its rebuttal, the state made the following remarks:
A confidential informer said that K.C. was spending some money and was nervous the day after. Folks, this man scored. There is no doubt he scored. But how cold you are when you do something the next morning there has to be some remorse, somethe coldness for many reasons. Anybody that can do this ...
Thus, the inadmissible hearsay was highlighted as part of the state's argument.
Also, the court instructed the jury as to La.R.S. 14:30.1, subd. A(2) and the robbery statutes. Although the jury may have convicted the defendant under the provisions of La.R.S. 14:30.1, subd. A(1), specific-intent murder, in a circumstantial case such as the current one, the idea of the defendant spending his ill-gotten gains shortly after the murder may have inflamed the jury in a case that was already both sad and grisly.
*1247 Even more importantly, the evidence as to defendant's possession of $2.00 bills went directly to the issue central to this case: his alleged presence in the store at the time the murder was committed. Under the law quoted in Wille and Hearold, this case is remanded for a new trial.

INCULPATORY STATEMENT
The defendant next contends that the trial judge erred in allowing the state to elicit and use an inculpatory statement by the defendant in violation of La.Code Crim.P. art. 768, which says that:
"Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
Counsel for defendant states that he did not find out about the inculpatory statement until the state's witness, Adrian Charles, was called to testify on the third day of the trial.
The record shows that the defendant was afforded pretrial discovery. The state offered the defendant full access to its file. However, the defendant did not take advantage of this. The trial court admitted the testimony, saying that it did not fit the technical definition of inculpatory. The jurisprudence supports this ruling.
"In order for a statement to be inculpatory, it must be made after the commission of the crime. State v. Lewis, 416 So.2d 921 (La.1982), appeal after remand, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied, 435 So.2d 433 (La.1983); State v. Quimby, 419 So.2d 951 (La.1982).
In Lewis, the court stated:
`Article 768 provides that, should the state fail to give notice of its intention to use a confession or inculpatory statement at trial, it is inadmissible. For purposes of this article, the term `inculpatory statement' refers to defendant's out of court admission made after a crime has taken place which implicates defendant in its commission. State v. Brent, 347 So.2d 1112 (La.1977); State v. Brumfield, 329 So.2d 181 (La.1976). Because the defendant made the challenged statement one hour before the crimes took place, Article 768 does not govern its admission into evidence." [Emphasis supplied]."
State v. Zeno, 499 So.2d 1342, 1344 (La.App. 3d Cir.1986).
In this case the statement at issue concerned plans made by the defendant to rob the Lavergne's store several months before Mrs. Lavergne was killed. Under the definition of inculpatory given in Zeno, this statement is not inculpatory, since it was made before the commission of the crime.

OPENING STATEMENT
The defendant further contends that in opening arguments the state made an impermissible reference to the allegedly inculpatory statement discussed above, in violation of La.Code Crim.P. art. 767 which states:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
However, this court has found that the statement referred to does not fit the jurisprudential definition of inculpatory. Therefore, La.Code Crim.P. art. 767 does not apply. Accordingly, we find no error in the trial court's ruling.

CONCLUSION
For the reasons assigned above, the conviction of Russell Ross Rubin is reversed and his sentence is vacated and set aside. This case is remanded to the district court for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
DOUCET, C.J., dissents with written reasons.
DOUCET, Chief Judge, dissenting.
I respectfully disagree with the majority's analysis of the informant testimony herein.
In this case we cannot say that the testimony submitted by Officer Guillory was more than required to explain the actions of *1248 the police under State v. Wille, 559 So.2d 1321 (La.1990). It served to show the chain that led the investigators to the defendant. The informant did not identify the defendant. Further, after reviewing the record as a whole, I do not believe that there is a reasonable possibility that this evidence contributed to the verdict. Additionally, I find that even if this evidence were not allowed, there remained sufficient evidence to find the defendant guilty of second degree murder beyond a reasonable doubt. Accordingly, I would affirm the conviction.