670 So.2d 414 (1996)
STATE of Louisiana, Appellee
v.
Nancy WILLIAMS, Defendant-Appellant.
No. CR95-879.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
*415 J. William Pucheu and Richard W. Vidrine, Ville Platte, for State of Louisiana.
Eric LaFleur, New Orleans, for Nancy Williams.
Before YELVERTON, WOODARD and AMY, JJ.
AMY, Judge.
After trial by jury, defendant, Nancy Williams, was convicted by a unanimous verdict of attempted second degree murder and sentenced to thirty-five years at hard labor. For the reasons set forth below, defendant's conviction and sentence are affirmed.

DISCUSSION OF THE RECORD
On April 30, 1994, the defendant and the victim, Milton Jackson, were engaged in an argument at the Express Lane in Mamou. The defendant followed the victim behind the cashier's counter. Wiggie Williams, brother of the defendant, grabbed the victim, pulled him over the counter, and held him while the defendant stabbed Jackson three times in his upper back, twice in the left side of his back, once in his lower back and once in his lower thigh. The stabbings resulted in the puncture *416 and collapse of his lower lung. Officer Allen Noel of the Mamou Police Department was dispatched to the scene and noticed that the victim was bleeding very badly. Subsequently, the victim received treatment at Savoy Hospital located nearby.
On June 10, 1994, defendant was indicted and pled not guilty to one count of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1. She was also charged with one count of criminal damage to merchandise having a value of over $500, a violation of La.R.S. 14:56. At the conclusion of defendant's trial by jury on the attempted second degree murder charge, the jury returned a verdict of guilty as charged. On March 17, 1995, defendant was sentenced to thirty-five years at hard labor. Defendant now appeals her conviction and sentence of attempted second degree murder.

ANALYSIS
Defendant filed three assignments of error in the trial court: (1) That the sentence imposed by the Honorable Preston N. Aucoin, Judge of the 13th Judicial District Court, is excessive such as to render it cruel and unusual as prohibited by the Constitution of the United States and the Constitution of the State of Louisiana; (2) The evidence presented by the state did not support the conviction of the defendant guilty of Attempted Second Degree Murder; and (3) The trial court erred in not allowing counsel for defendant to present testimony and/or records of the victim's previous criminal record.

SUFFICIENCY OF THE EVIDENCE
In the case before us, the defendant was convicted of attempted second degree murder. La.R.S. 14:30.1 sets forth that "[s]econd degree murder is the killing of a human being ... [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La.R.S. 14:27(A) provides:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
In State v. Butler, 322 So.2d 189, 192 (La. 1975), the Louisiana Supreme Court held that since "[t]he crime of murder is `the killing of a human being,' under certain circumstances.... `[t]he elements of the crime of attempted murder are specific intent to kill a human being and an overt act in furtherance of the object....' [A] specific intent to kill is an essential element of the crime of attempted murder." (citations and quotations omitted).
Accordingly, as a matter of law, attempted murder may not be committed by an act with only the specific intent to commit great bodily harm; there must be specific intent to kill. Butler, 322 So.2d 189; State v. Strother, 362 So.2d 508 (La.1978); State v. Hall, 606 So.2d 972 (La.App. 3 Cir.1992), writ denied, 644 So.2d 385 (La.1994). Thus, the state must establish both of the following beyond a reasonable doubt: (1) that the defendant specifically intended to kill a human being and (2) that she committed an "act for the purpose of and tending directly toward the accomplishing of that intent.
The victim, Milton Jackson, testified that he and Darren Allison went to the Express Lane between twelve midnight and one a.m. on April 30, 1994 to get something to eat and drink. When they arrived in the parking lot at the Express Lane, the defendant and Brenda Williams were there. Jackson testified that he had known the defendant for two or three years, and he recounted that at a party months previous to this encounter, he had argued with defendant's brother-in-law, and she became involved, threatening him and had pulled a butter knife on him. Jackson testified that at this party he then punched the defendant and split her lip.
After the defendant climbed into the truck, Jackson testified that he informed Allison that if the defendant would be riding in the truck that he would get out. At this point, Jackson got out of the truck and began speaking with Sonny Richard and Michael Godley. He testified that at this point the defendant approached him and tried to start an argument by calling him names, but that *417 he just walked away and proceeded into the store. He testified that he never touched the defendant, and had tried to walk away from her when she was trying to argue with him. He further testified that as he was entering the store, the defendant threw a bottle at him and then proceeded to follow him inside. He related that he turned around to face her and he saw a knife in her hand. He testified that he ran behind the counter and told the store clerk, Paul LeJeune, to call the police. The defendant followed him behind the counter. At this point, the victim testified that Wiggie and Brenda entered the store and remained in front of the counter; that Brenda began throwing things at him and an object hit him on the head; and that Wiggie informed him that he had warned him not to mess with his sister and accused him of hitting his sister. The victim testified that he denied ever hitting the defendant that night and tried to explain that the defendant was screaming at him for having hit her months earlier.
The victim testified that Wiggie then grabbed him and held him down with his shirt over his head, which made him unable to see. The victim testified that after Wiggie grabbed the victim and held him down, the defendant started stabbing him. The victim testified that the defendant's nephews, Tracy and Stacy, came in the store at this point and started punching him and that when someone yelled out, "The police are coming," they scattered. Jackson explained that his back went numb and he was bleeding. When he left, his shirt stayed in the store.
The victim explained that after everyone fled, he went outside and was angry. He related that he saw Wiggie and picked up two bottles and threw them at Wiggie, and that Wiggie came after Jackson with what he believed was a knife, and Jackson began running to the hospital.
Paul LeJeune, the cashier at the Express Lane that night testified that the victim entered the store and asked him to call the police. The defendant followed the victim in and the victim walked behind the cashier counter. LeJeune inquired as to what they were doing and the victim responded to call the police. Next, he testified that the victim picked up a ticket pricing gun and threatened defendant saying, "Stay away from me. Just leave me alone." The victim testified that he never picked up the pricing gun.
LeJeune testified that the defendant told the victim that she was going to get him while she was screaming and cursing at him. LeJeune testified that the defendant told the victim that she would teach him to do that to her. LeJeune related that it was at that point in the exchange that he saw the blade in her hand. LeJeune described the weapon as a small lock blade knife, or as a pocket knife, and that the blade was about three inches long. LeJeune testified that the victim continued to back up until he was behind him and that the victim told defendant to leave him alone. LeJeune testified that he then asked the defendant to leave, but that she responded for him to get out of her way. LeJeune remembered Wiggie telling the defendant to stop when they were all in the store and the defendant was moving toward the victim.
LeJeune explained that Brenda Williams, Tracy Williams and Wiggie Williams were on the other side of the counter. LeJeune testified that he saw something fly across the counter, then the victim reached out and hit Wiggie. At this point, the victim and Wiggie began to fight. The victim punched Wiggie who, in return, grabbed the victim by the neck. The defendant and Wiggie were pulling the victim in two different directions. Wiggie pulled the victim by his shirt over the counter toward him and started punching the victim. LeJeune testified that he observed that the victim did not have the pricing gun in his hand at this point because the victim had hit Wiggie with his right hand and that was the hand with which he had held the pricing gun. The defendant then grabbed the victim and began stabbing him, and Wiggie let go of the victim. Then, Brenda, Tracy and Wiggie all pulled at Nancy and asked her what she was doing. LeJeune testified that the victim then fell to the floor and curled up.
At this point, defendant grabbed eight or nine whiskey bottles and smashed them over the victim's head. LeJeune testified that the defendant then grabbed the cash register *418 and threw it on top of him and grabbed a large wooden chair and threw it on top of the victim. The victim stood up, jumped over the counter and ran out the door. Tracy, Wiggie and Brenda walked out and yelled at the victim who then pulled a beer bottle out of a trash can and threw it, hitting Wiggie. When the defendant walked outside, she began screaming. When the victim saw her, he ran toward the hospital. LeJeune stated that the victim never tried to hit the defendant.
Dr. Gregory Savoy, one of the victim's treating physicians, testified that one of his lungs had collapsed as a result of the stabbing. He testified that the cuts were deep enough for at least one to penetrate the chest cavity, causing the lung to collapse. He said the collapsed lung caused the victim breathing difficulty and could have caused death. Savoy further stated that the victim had multiple stab wounds over and on his arm, his left lower back, the high portion of his back, and his left thigh. The victim showed the jury his scars.
The defense called the defendant who testified that the night before the incident, she had been out and spent some time with the victim. She said they had talked and kissed. She recounted that the victim had split her lip open a few months before at a party and that after that incident she was afraid of him and that he would harass her when she would see him.
The defendant testified that on the night of the incident, she and her sister Brenda were walking to the Exxon to drink beer, and that Allison called Brenda over to his truck and she suggested they go for a ride. The defendant testified that the victim wanted to get in the truck, but that she did not want to be around him and started to get out of the truck. She testified that the victim protested and slapped her, but that she got out of the truck and picked up a knife which fell out of his pocket. She described the knife as a little pocket knife. She testified that she and the victim argued, and she followed him into the store and threatened him. She testified that the victim picked up the pricing gun to hit her, and that is when she pulled out the knife. She testified that she followed him behind the counter to teach him a lesson, but she did not intend to kill him. She testified that the victim then punched Wiggie, and that she stabbed the victim in response to his raising the pricing gun at her. She explained that they were arguing, and the victim was cursing at her, and that she feared for her personal safety because he had hit her with brass knuckles months before. She further testified that when she walked in the store, she had the knife in her shoe, not in her hand. She explained that she slipped it out when he threatened her with the pricing gun, and she then hid it underneath her jacket. She testified that Wiggie had not tried to hold down Jackson in order for her to stab him.
On cross-examination, she restated that she had talked with and kissed the victim the night before she stabbed him. When asked why she did this if she was afraid of him, she stated that on that night, he was alone and had "sweet-talked" her. She explained that they met on the street that night and had talked for about thirty minutes, and that she did not have hard feelings against him for having busted her lip but that she was scared of him. She testified that she thought she was stabbing the victim in the leg, and that she stabbed him to stop him from hitting her. She denied throwing bottles or a cash register. She explained that she ran away after the incident because she could not believe what she had done.
On appeal, defendant contends that the evidence was insufficient to support her conviction of attempted second degree murder because she maintains that the evidence was insufficient to establish that she had the specific intent to kill.
Whether an accused possessed the requisite specific intent is an ultimate legal conclusion that must be resolved by the finder of fact. State v. Govan, 593 So.2d 833 (La.App. 4 Cir.), writ denied, 600 So.2d 654 (La.1992); State v. Rayford, 476 So.2d 961 (La.App. 1 Cir.1985). Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *419 La.R.S. 14:10(1). Since specific criminal intent is a state of mind, it need not be proven as a fact, but it may be inferred from the circumstances present in the case and the actions of the defendant. State v. Hongo, 625 So.2d 610 (La.App. 3 Cir.1993), writ denied, 93-2774 (La. 1/13/94), 631 So.2d 1163. Also, specific intent may be established by direct evidence, including the statements of the defendant. State v. Dixon, 620 So.2d 904 (La.App. 1 Cir.1993); State v. Navarre, 498 So.2d 249 (La.App. 1 Cir.1986).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981); Hongo, 625 So.2d 610.
When there is conflicting testimony, it is the role of the fact finder, rather than the appellate court, to weigh the respective credibility of the witnesses. Accordingly, an appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency of the evidence review. Graffagnino, 436 So.2d 559. Since only irrational decisions to convict will be overturned, the conviction will be upheld if the interpretation of the evidence most favorable to the state is sufficient to establish all of the essential elements of the crime beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988).
In the case before us, there was ample evidence indicating defendant specifically intended to kill the victim from her words and actions at the time of the offense, the nature and extent of the victim's stab wounds, and from the nature in which the crime was committed. Accordingly, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to find defendant guilty of attempted second degree murder. Accordingly, the defendant's second assignment of error lacks merit.

EXCESSIVENESS OF SENTENCE
In sentencing defendant, the trial court elected to deviate upward from the Sentencing Guidelines and imposed a sentence that was one and one-half times the maximum recommended sentence. In determining whether defendant's sentence is excessive, we must first consider whether the trial court complied with State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237. In Smith, 639 So.2d at 240, the Louisiana Supreme Court held that as long as a trial court considers the Guidelines, it enjoys "complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive, but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence." (emphasis added). The record indicates that the trial court specifically stated that he had considered the Guidelines and that he rejected the recommended sentence of a minimum of 210 months and a maximum of 240 months. Thus, the first requirement of Smith has been met.
Once we conclude that the trial court considered the Guidelines, we then determine whether the trial judge adequately set forth the considerations he took into account in fashioning the sentence and the factual basis for the sentence imposed.
The record demonstrates that the following considerations were taken into account by the trial court for his upward departure from the Guidelines and imposition of the sentence. He stated that he believed a lesser sentence would deprecate the seriousness of the offense and he noted the sixteen misdemeanor offenses defendant had committed between 1984 and 1994, including theft by shoplifting (three counts), resisting an officer/arrest (three counts), simple battery (two counts), disturbing the peace by fighting (four counts), assaulting a police officer (three counts), and escape. He further noted the defendant was a danger to society, and *420 defendant stated she stabbed the victim to teach him a lesson. These considerations are supported by the record. Nevertheless, as the defendant correctly points out in brief, there are also some considerations set forth by the trial court which are not supported by the record.
Notwithstanding the trial court's failure to sentence the defendant solely on the basis of the record, this court will disregard the conclusions that are extraneous to the record and will consider the merits of defendant's assignment of error that her sentence is excessive. See State v. Manuel, 94-1187 (La. App. 3 Cir. 5/3/95), 657 So.2d 138; State v. Williams, 93-1505 (La.App. 3 Cir. 4/6/94), 635 So.2d 630.
Article 1, § 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." The Louisiana Supreme Court has determined that "a sentence is excessive and unconstitutional if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering." State v. Bonanno, 384 So.2d 355, 357 (La.1980). In determining whether a sentence is excessive, the Louisiana Supreme Court has instructed appellate courts to "consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice." Id. at 358. In analyzing whether a sentence is disproportionally severe, the analysis focuses on several factors, including the nature of the offense, the offender's criminal history, and the comparison of the defendant's punishment with sentences imposed for similar crimes. State v. Telsee, 425 So.2d 1251 (La. 1983).
The defendant violently attacked the victim by stabbing him several times. The victim's lung collapsed which could have resulted in death had emergency measures not been available. Defendant testified she stabbed the defendant to "teach him a lesson." In State v. Smith, 625 So.2d 620 (La. App. 3 Cir.1993), this court affirmed a forty-year sentence for a defendant convicted of attempted second degree murder. The defendant has a lengthy criminal record. Based on these considerations, we do not find the defendant's sentence to be constitutionally excessive.

EVIDENCE ON PRIOR CRIMINAL HISTORY
The defendant assigned as error with the trial court, that it erred in not allowing counsel for defendant to present testimony and records of the victim's previous criminal record. Defendant did not brief this assignment of error on appeal and correctly noted that the failure to argue an assignment of error constitutes a waiver and abandonment of that error. State v. Rubin, 94-982 (La.App. 3 Cir. 2/8/95), 649 So.2d 1240; Uniform RulesCourts of Appeal Rule 2-12.4.

ERRORS PATENT
Pursuant to La.Code Crim.P. art. 920, we have reviewed the record for errors patent and find none.

DECREE
For the reasons assigned, defendant's sentence and conviction are affirmed.
AFFIRMED.