STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**17-1099**


STATE OF LOUISIANA

VERSUS

TROHERRO KEITH BATISTE


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 330,421
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**ELIZABETH A. PICKETT**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**REVERSED; CONVICTIONS AND SENTENCES VACATED; AND
REMANDED FOR A NEW TRIAL.**


**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT- APPELLANT:**
     **Troherro Keith Batiste**

**Phillip Terrell, Jr.**
**District Attorney, Ninth Judicial District Court**
**Catherine L. Davidson**
**Assistant District Attorney**
**P. O. Box 1472**
**Alexandria, La 71309**
**(318) 473-6650**
**COUNSEL FOR STATE-APPELLEE:**
     **State of Louisiana**

**PICKETT, Judge.**

<u>FACTS</u>

On March 15 and 16, 2016, the state alleges that the defendant, Troherro Keith Batiste, battered the victim and caused her to undergo surgery for major injuries. The evidence revealed that the defendant had battered the victim on multiple prior occasions. In fact, on the day of the incidents in question, the defendant pled guilty to domestic abuse battery.

On June 12, 2017, the defendant's grand jury indictment was amended to charge the defendant with: 1) Count one – attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1, "in that he did, on or about and between the 15th day of March, 2016 and the 16th day of March, 2016, attempt to commit Second Degree Murder of Rene Mason"; 2) Count two – aggravated second degree battery, a violation of La.R.S. 14:34.7, "in that he did, on or about and between the 15th day of March 2016, and the 16th day of March 2016, without the consent of the victim, intentionally inflict serious bodily injury with a dangerous weapon, to wit a barbecue pit, upon Rene Mason"; 3) Count three – aggravated second degree battery, a violation of La.R.S. 14:34.7, "in that he did, on or about and between the 15th day of March 2016, and the 16th day of March 2016, without the consent of the victim, intentionally inflict serious bodily injury with a dangerous weapon, to wit a barbecue pit, upon Rene Mason"; and 4) Count four – second degree battery, a violation of La.R.S. 14:34.1, "in that he did, on or about and between the 15th day of March 2016, and the 16th day of March 2016, without the consent of the victim, intentionally inflict serious bodily injury upon Rene Mason." After a trial by jury held June 13, 2017, to June 15, 2017, the defendant was found guilty as charged on all counts. Thereafter, on August 14, 2017, the defendant was sentenced as follows:

Attempted second degree murder – 35 years

Aggravated second degree battery – 15 years

Aggravated second degree battery – 15 years

Second degree battery – 8 years.

The trial court ordered the sentences to run concurrently with the sentence imposed for attempted second degree murder. Additionally, the trial court ordered "the sentence" to be served without benefit of probation, parole, or suspension of sentence. Thereafter, on August 16, 2017, the defendant filed a Motion for Appeal and Designation of Record, which was granted on August 18, 2017. On September 12, 2017, the defendant filed a pro se "Motion to Reconsideration." On September 19, 2017, the defendant filed a pro se "Motion to Reconsider the Imposed Sentence and Contradictory Hearing." The trial court denied the motion as untimely.[1] The defendant is now before the court alleging four assignments of error.

## ASSIGNMENTS OF ERROR

1. The trial court erred in denying the objection to the hearsay testimony of Kevin Thomas

  a) through a police officer's testimony; and
  b) in a statement made by Thomas for investigative
  purposes.

Kevin Thomas' statements had not been subject to confrontation or cross-examination in violation of the confrontation clause.

2. Should this Honorable Court find the lack of objection to the introduction of the statement of Kevin Thomas precludes review of the Assignment of Error No. 1, then review should be allowed as the failure to object constitutes ineffective assistance of counsel.

3. The equal protection guarantees outlined in *Batson v. Kentucky* were violated in this case.

4. The trial court erred in sentencing Troherro Keith Batiste without benefit of parole on counts 2-4 as the crimes of aggravated second degree battery and second degree battery do not provide for that restriction in this case.

---

[1]We note that the trial judge that denied the motion to reconsider as untimely was Judge Thomas Yeager, a different judge from the judge who presided over trial and sentencing (Judge Monique Freeman Rauls).

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In assignment of error number one, the defendant challenges the trial court's admission of a statement made by Kevin Thomas, a witness who refused to testify at trial. The defendant argues the admission of Mr. Thomas's statement through the testimony of Officer Torrence Bowens violated his right to confront his accusers. In assignment of error number two, the defendant, out of an abundance of caution, asserts his counsel was ineffective for failing to reassert his objection to the introduction of Mr. Thomas's written statement. We will discuss both assignments together.

Deputy Jerry McKinney testified that he went to the cell block to get Mr. Kevin Thomas to testify, but Mr. Thomas refused to accompany the deputy to the courtroom. The state requested the trial court order Mr. Thomas to come into the courtroom and testify. The trial court then asked Deputy McKinney to instruct Mr. Thomas that he was being ordered by the trial court to testify. According to Deputy McKinney, Mr. Thomas continued to refuse to testify. Mr. Thomas was never brought to the courtroom. The trial court did not directly address Mr. Thomas regarding his refusal to testify. The state asked the trial court the following:

BY MR. METOYER:

> Your Honor, we would ask, that under Code of Evidence, Article 804.2, that when a witness - - when a witness persist or refusing [sic] to testify concerning the subject matter of his statement, despite an order of the Court to do so, that he be declared unavailable as a witness.

Defense counsel responded that he had no objection, stating that he believed that was the law. The following colloquy then took place:

BY MR. METOYER:

> And, Your Honor, since that is the state of the law, that also entitles the - - the State to have his record put in, and we can publish it to the jury.

BY THE COURT:

3

The Court declares him unavailable.

BY MR. METOYER:

Okay.

BY MR. SMITH:

I - - I would object to that, inasmuch as I've not had an opportunity to cross and confront the, uh, witness, as - -

BY MR. METOYER:

Neither has the - -

BY THE COURT:

The Court will - -

BY MR. METOYER:

Neither has the State.

BY THE COURT:

The Court will allow it.

BY MR. METOYER:

Thank you. Okay.

BY THE COURT:

So objection's overruled.

. . . .

BY MR. METOYER:

Your Honor, uh, I think, and just for purposes of the record for Mr. Smith - - to Mr. Smith's objection, according to, uh, Justice Scalia, before he died, uh, my understanding is this, the State - - the State's duty is to provide the witness to be available for cross-examination. By having him subpoenaed and having Mr. Thomas here, we have certainly made him available, but we - - and the Court has ordered him. So we're - - we've met out [sic] burden in terms of providing the ability to cross-examine him.

So, if there is some objection to that, the State - - it's a - - it's an evil - - even playing field, because the State did not get him on direct. Plus, these statements have been provided to - - to Mr. Smith in the beginning. They're not - - they're not surprise, and there's no prejudice.

4

BY MR. SMITH:

    Agreed.  I - - I just - - it's - - it's - - I believe I have a Sixth Amendment Right to cross and confront the - - my accusers.  I will, however, uh, I - - I will - - I will, un, [
sic] I will admit that I - - I've seen - - I've seen his statements way back. And, uh, that - -that's all I can say.

The state called Officer Torrance Bowens to testify regarding his investigation of the incident at issue.  As part of his investigation, Officer Bowens spoke with Kevin Thomas.  Officer Bowens identified State's Exhibit 49 as Mr. Thomas's transcribed statement.  When asked to testify as to the substance of the statement, Officer Bowens stated:

    A.    Yes, sir.  Mr. Thomas advised, when asked, uh, I believe I asked him did - - was he aware of an incident that took place, uh, between Mr. Batiste and Ms. Mason on the 16th of March.  And he advised yes, he was aware.  He said, on - - on that, uh, I would assume it would be before day at - - at - - on the 15th, Ms. Mason and Mr. Batiste, he said they were seen at a - - at an abandoned house in the area where he hangs.  He said that he heard Ms. Mason scream, and she ran toward where they were, where they were hanging and drinking.

    He said that - - and when she came close, she said, "Help, he's trying to kill me.  He's trying to hurt me."  He advised that Mr. Batiste was coming toward her, and a group of men that were there stopped Mr. Batiste from coming close to her.  He said, during that time, Mr. Batiste picked up a barbecue pit and hit Ms. Mason with it, and also hit her with a crate.

    Q.    Okay.  If you would, um, I want to direct your attention to Page 2, okay.  And at the top of, uh, Page 2, can you read - - that 'Q', what does that - - what does that mean?

    A.    Question.

    Q.    And who - - who was giving the question?

    A.    That would be me.

    Q.    Okay.  And the 'A' means what?

    A.    Answer.

    Q.    Who was giving the answer in this statement?

    A.    That would be Mr. Thomas.

5

Q.     Can - - at the top of Page 2, can you tell me what the question is that you asked?

A.     "Can you tell me, in your own words, exactly you saw [sic] and what happened?["]

Q.     And can you please read what Mister - - the answer that was giving [sic] to you by Mr. Kevin Thomas.

A.     Yes, sir.  "That night, I was in - - I was in the backyard, right there at 1416 Sixth Street, and we was all barbecuing, you know, drinking a couple of beers and stuff.  And we heard, you know, Rene scream.  We looked up, and she was running.  She came over there, and she - - she was saying he was trying to beat her up, you know.  He was going to hurt her.  You know, she could - - she could have hung, kind of hung around.  And a little short while after, he came, you know, over there where he was trying to get her.  And she was, you know, piling behind us.  You know what I'm saying?  That he was going to kill her.  He's going to kill her.  He's going to hurt her."

Q.     Wait, let me - - let me stop you for a second.  So Kevin Thomas heard Mr. Batiste say that he was going to kill her?  Is that what the - - - is that - -

A.     It's - - it's unclear if - - if it was Mister - - from reading this, I - - I - -.

Q.     Right.

A.     - - remember, from taking the statement, that Mr. Thomas was saying Ms. Mason was gonna - - was - - was the one saying - -

Q.     So, it's Mr. - - it's Mr. Thomas saying that?

A.     Right.

Q.     "I'm saying that he was going to kill her."  Okay - -

A.     Right.

Q.     - - go ahead.

A.     "He's going to hurt her.  A couple of the guys kind of talked him down, and, uh, he left.  Then he came back, and he tried to get her again, and the same thing just repeated itself over and over.  She's running behind us, and he picked the barbecue pit up off the top of the barbecue grill and threw it at her, and hit her with it, kind of, but - - and she kind of bent down.  She was crying and screaming he was going to kill her.  So that's when the guys kind of pushed him off - - off of her, I'm sorry, and made him leave out of the yard.  Then both, five minutes later - - I'm sorry, then about five minutes later, he came back again.  Then that's when he was trying to tell me he wasn't going to hurt her, he just wants to talk to her and every - - and, uh, and everything."

6

"So everybody's kind of like - - everybody kind of like left him alone.  He's trying to start talking, and kind of got back close.  And they left and went back over there by the white house.  And that was the last time I saw him or heard anything from him, until the next day when I found out that he had got - - that he had hurt her."

Q.     Okay.  And what was the next question that you asked?

A.     "Okay, did you, other than the barbecue pit, did you see him hit - - did you see him hit her?"

Q.     And what was the answer?

A.     "Well, I saw him pick up a - - I'm sorry, I saw him throw a plastic crate at her.  But when he initially - - when he first came over there, they wouldn't let him get close enough to hit her."

Q.     Okay.  Keep going.

A.     "You know, that's when he grabbed the barbecue pit and picked it - - and picked it up, and threw it at her.  After he hit her, then that's when he grabbed again" - - I'm sorry, "that's when they grabbed him again, and made him leave."

Q.     And keep going.

A.     My next question is, "Where did the barbecue hit her - - hit her?"  "I think it was like either on her arm or elbow, or on her arm, somewhere in that area.  But it made a contact noise.  You could hear it when it hit her."
. . . .

Q.     Okay.  And I - - I think that's sufficient.  But your understanding was, was that he hit her with the barbecue pit lid, I'm guessing, and - - and the crate as well?

A.     Yes.

Q.     And that would have been not only from this statement and it's transcription, but from your notes that you took before the statement was made?

A.     Yes.

The state introduced Mr. Thomas's statement as State's Exhibit 49, and defense

counsel stated, "Without objection."

*Defendant's Argument in Brief*

Appellate counsel argues the trial court erred in allowing Officer Bowens's testimony regarding Mr. Thomas's statement since Mr. Thomas's statement was testimonial in nature and was introduced without the defendant having the opportunity to cross-examine Mr. Thomas. Additionally, appellate counsel argues the erroneous introduction of the statement was not harmless:

> The hearsay testimony and hearsay statement of Kevin Thomas likely tipped the scales with the jury in establishing the "intent to kill" element of count 1, attempted second degree murder, as the State failed to prove a weapon was used and Ms. Mason had little recollection of the events. Likewise, without this evidence, the jury had no evidence to show the use of a barbecue pit or crate in Counts 2 and 3. Thus, there was no proof in those counts to prove that a dangerous weapon was used to cause the injuries. Thus, this evidence was not harmless beyond a reasonable doubt.

In assignment of error number two, appellate counsel raises an ineffective assistance of counsel claim in the event this court finds the defendant's initial objection to Officer Bowens's testimony regarding Mr. Thomas's statement was not sufficient to preserve the objection to Mr. Thomas's written statement. As noted earlier, defense counsel stated he had no objection to the state's introduction of the written statement. When defense counsel initially asserted the "confrontation clause" objection, it was in response to the state's declaration that Mr. Thomas's unavailability allowed it "to have his record put in, and . . . publish[ed] . . . to the jury." Officer Bowens then proceeded to testify as to the substance of Mr. Thomas's statement. Since defense counsel made his objection known to the trial court prior to Officer Bowens's testimony regarding Mr. Thomas's statement, defense counsel's lack of objection to the introduction of the written statement does not impede review of this assignment of error. Further, when there is an issue regarding the possibility of the violation of a basic constitutional right, failure to object does not preclude appellate review. Accordingly, there is no need to address defense counsel's ineffective assistance of counsel claim.

The state focuses its argument on the fact that Mr. Thomas was, in fact, unavailable since he refused to testify. Although the state argues the trial court did not err in admitting Officer Bowens's testimony regarding Mr. Thomas' statement, the state contends any error would be harmless:

> Here, the testimony of Detective Torrence Bowens related to the statement of Kevin Thomas pales in comparison to the testimony of the Library personnel who found Renee Mason unable to hold her head up and who had obviously been beaten; hospital personnel who testified to the extent of Rene Mason's injuries, indicating Rene Mason was dying when she arrived at the hospital; the medical records that were submitted which describe traumatic brain injury, brain swelling, and the necessity of immediate brain surgery on Rene Mason.

> Additionally, because of Rene Mason's admission to transport personnel and hospital personnel that "her boyfriend, the defendant, had caused her injuries and the fact that Renee Mason was moved to a Level 1 trauma, the hospital was put on lock down. Further, due to the severity of her injuries, Renee Mason was unable to eat on her own and was placed on a nasal gastric tube; was unable to breath [sic] on her own and was intubated; and had to undergo a craniotomy. When Renee Mason arrived at the hospital she had a broken collar bone and not only bruising over her entire body, but lacerations to the face and hands.

> In addition to eyewitness and medical testimony to the extent of Renee Mason's injuries, the State introduced numerous incident reports related to the defendant beating Renee Mason. In an effort to corroborate these incident reports, the State offered the testimony of seven (7) Alexandria Police Officers who had encountered the defendant in altercations with Renee Mason for the course of 2-3 years.

> Finally, the State introduced the Defendant's own statement made on March 16, 2016 that he inflicted Renee Masons' injuries; the Defendant's guilty plea entered on March 16, 2016 for the battery of Renee Mason; and not one (1) BUT three (3) admissions to causing the injuries to Renee Mason on March 15-16, 2016, which were filed by the Defendant into the court record as letters to the Rapides Parish Clerk of Court and a 9th Judicial District Court Judge.

> ALL of this testimony and ALL of these documents were presented to the jury AND submitted into evidence ***prior*** to the testimony of Detective Torrence Bowens related Kevin Thomas [sic].

*Law and Analysis*

Louisiana Code of Evidence Article 804 provides:

**A. Definition of unavailability.** Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:

. . . .

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;

. . . .

**B. Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.

**(2) Statement under belief of impending death.** A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

**(3) Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

**(4) Statement of personal or family history.** (a) A statement, made before the controversy, concerning the declarant's own birth, adoption, marriage, divorce, filiation, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or

(b) A statement, made before the controversy, concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

**(5) Complaint of sexually assaultive behavior.** A statement made by a person under the age of twelve years and the statement is one of initial or otherwise trustworthy complaint of sexually assaultive behavior.

. . . .

**(7)(a) Forfeiture by wrongdoing.** A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

(b) A party seeking to introduce statements under the forfeiture by wrongdoing hearsay exception shall establish, by a preponderance of the evidence, that the party against whom the statement is offered, engaged or acquiesced in the wrongdoing.

Although the state argues Mr. Thomas was unavailable under La.Code Evid. art. 804(2), the state offers no argument as to whether Mr. Thomas's statement falls within one of the above exceptions to the prohibition of hearsay testimony. We find that it does not. Furthermore, Mr. Thomas' statement was testimonial in nature and was admitted in violation of the defendant's right to confront the witnesses against him. In a similar situation, this court found a defendant's confrontation rights were violated:

The defendant argues, in the one assignment of error filed by his counsel, that the trial court erred when it allowed the admission of the victim's two out-of-court statements because they were inadmissible hearsay; and that he was deprived of his Sixth Amendment right to confront and cross-examine his accuser.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. *See Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). The confrontation clause of our state constitution specifically and expressly guarantees each accused the right "to confront and cross-examine the witnesses against him." *See* La. Const. art. 1, § 16, titled "Right to a Fair Trial."

Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940)). Cross-examination is the principal means

11

by which believability and truthfulness of testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. *See Davis v. Alaska,* 415 U.S. at 316, 94 S.Ct. at 1110; *State ex rel. Nicholas v. State,* 520 So.2d 377, 380 (La.1988); *State v. Hillard,* 398 So.2d 1057, 1059–1060 (La.1981).

*State v. Robinson,* 01–273, pp. 5–6 (La.5/17/02), 817 So.2d 1131, 1135 (footnote omitted).

Louisiana Code of Evidence Article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, both of the victim's written statements are hearsay. Louisiana Code of Evidence Article 802 provides that "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." In arguing that the statement was properly admitted, the state relies on the exceptions to the hearsay rule found in La.Code Evid. arts. 804(A)(2) and 803(1) and (2).

Louisiana Code of Evidence Article 804(A)(2) addresses the situation where the witness is unavailable to testify and it reads as follows:

**A. Definition of unavailability.** Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:

. . . .

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so[.]

In response, the defendant relies on the holding in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354 (2004), which bars admission of all out-of-court testimonial statements unless the witness who made the statement was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.

*State v. Savoy*, 11-1041, pp. 6-7 (La.App. 3 Cir. 4/4/12) (unpublished opinion), *writ denied*, 12-915 (La. 10/26/12), 99 So.3d 639.

Because the state failed to prove the unavailability of the witness, the court in *Savoy* discussed whether the excited utterance exception provided for in La.Code Evid. art. 803 was applicable. After finding the statement was an excited utterance, the court nonetheless found the defendant's confrontation rights were violated since the statement was "testimonial" in nature and was admitted without an opportunity for the defendant to cross-examine the witness:

> We do find, however, that the first written statement, given to the police within fifteen minutes after the defendant escaped into the swamp, was an excited utterance and, therefore, an exception to the hearsay rule. However, the inquiry does not end there. The statement made at the bridge was testimonial in nature, and the facts given in the statement were offered into evidence to prove the truth of the matter asserted. According to the rationale of the United States Supreme Court in *Crawford,* the statement is still not admissible unless the defendant had a prior opportunity to cross-examine the victim before the testimonial statement was introduced into evidence. The state asserts that the defendant's failure to cross-examine the victim at trial satisfies that requirement. We disagree.

> In *State v. Williams,* 04–608 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, *writ denied,* 05–81 (La.4/22/05), 899 So.2d 559, the fifth circuit found that the defendant was denied his Sixth Amendment right to confront his co-defendant, who had made an out-of-court statement that the defendant was the one who killed the victim, then refused to testify at trial. The fifth circuit discussed whether the trial court erred when it admitted the co-defendant's statement into evidence, as follows:

>> In this case, as previously noted, Arvel Gurganus refused to be sworn in and asserted his Fifth Amendment privilege against self-incrimination. The trial court then ruled that Gurganus was unavailable. After Gurganus was given testimonial immunity, he provided unresponsive answers to the prosecutor, when asked questions about his police statement. In his police statement, Gurganus admitted stealing a van on the morning November 25, 2000. It appears that Gurganus' statement qualifies under the declaration against penal interest exception to the hearsay rule making the statement admissible. In his statement, Gurganus incriminates himself in the additional crime of stealing a van, thereby subjecting himself to additional criminal charges, which gives reliability to his statement.

>> In *Crawford v. Washington* however, which was rendered after the present case was tried and decided, the United States Supreme Court found that certain ex parte examinations, while admissible under modern hearsay rules, are exactly the kind of testimonial evidence against the

accused that the confrontation clause is supposed to prevent: that is, testimonial evidence in the form of an out-of-court declaration to establish or prove a fact. The Supreme Court found that under the Sixth Amendment a necessary condition for the admissibility of the testimonial statements against an accused in a criminal case is the prior opportunity to confront the unavailable witness. The Court noted that statements taken by police in the course of interrogations are testimonial hearsay for purposes of the Sixth Amendment, and that these statements present a unique opportunity for prosecutorial abuse. Therefore, in light of *Crawford v. Washington,* in order for Gurganus' police statement to be admissible in the present case, the State had to show that Gurganus was unavailable and that there was a prior opportunity to confront the witness.

The first question under this analysis is whether Gurganus was unavailable. Under LSA–C.E. art. 804, "a declarant is 'unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court." This includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement, persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so, or testifies to a lack of memory of the subject matter of his statement. Here, Gurganus first asserted his Fifth Amendment privilege, and then persisted in refusing to testify concerning the subject matter of his statement when questioned by the prosecutor, which would make him unavailable under LSA–C.E. art. 804.

The State argues in its brief that Williams cannot claim that he was denied his right to confrontation, because Gurganus agreed to answer the questions posed by the defense, and the defense instead chose not to confront the witness on the subject matter of his statement, but rather focused its questions on his mental health. The State is correct that the defense's questions focused on Gurganus' mental health, but the record reveals that prior to the witness's cross-examination Gurganus stated that he did not give a statement to the police and suggested that it must have been somebody with the same name. If Gurganus did not give the statement to the police, it would, in fact, have made no sense for the defense to ask Gurganus about a statement that he testified he did not make. Assuming that Gurganus had made the statement, he was still unavailable because he testified to a lack of memory of the subject matter of his statement. Under *Crawford v. Washington* the only remaining question for determining the admissibility of the testimonial statement is whether there was a prior opportunity to confront the unavailable witness. The record

reveals that there was no prior opportunity for the defense to confront Gurganus. Therefore, it appears that the trial court violated the defendant's Sixth Amendment right to confrontation by admitting Gurganus' statement.

*Id.* at 1100-02 (footnotes omitted).

Like *Williams,* the record in the current case does not reflect that there was an opportunity to cross-examine the witness at the time she made the statement or any time subsequent. The victim refused to testify regarding her statement at trial, and it was very unlikely that she was going to answer the defendant's questions either. It was error for the trial court to allow the admission of the victim's written statement, even though it was an excited utterance or present sense impression, because the statement was testimonial in nature and the defendant had no prior opportunity to confront the victim.

*Savoy*, 11-1041 at pp. 10-12.

In the present case, the lack of the defendant's opportunity to cross-examine Mr. Thomas appears to be uncontested. Defense counsel's knowledge and awareness of Mr. Thomas's statement did not satisfy his constitutional right to cross-examine Mr. Thomas regarding the statement. The only question is whether Mr. Thomas's statement was testimonial in nature. In *State v. Falkins*, 12-1654, pp. 11-13 (La. App. 4 Cir. 7/23/14), 146 So.3d 838, 847–48, the fourth circuit addressed the issue of whether a statement was testimonial:

The defendant first argues that the 911 calls should have been suppressed because the substance of the calls was testimonial in nature, and therefore violated his rights under the Confrontation Clause of the Sixth Amendment, which guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. *Cruz v. New York,* 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *State v. Collins,* 10–0757, p. 22 (La.App. 4 Cir. 5/11/11), 65 So.3d 271, 286.

In support of this argument, the defendant relies on United States Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), wherein the Court held that the admission of a recorded statement given to police by the defendant's wife violated the defendant's right under the Confrontation Clause because the statement was hearsay, because it was testimonial in nature, and because his wife did not testify at trial due to the state's marital privilege. Most significantly, because his wife did not testify at trial, the defendant had no other opportunity to cross examine her. The Court specifically

declined to define the term, "testimonial," stating only that "[w]hatever else the term covers, it implies at minimum to . . . police interrogation." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

The Supreme Court later elaborated on the meaning of testimonial statements in connection with the Sixth Amendment's Confrontation Clause in *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)—a case dealing specifically with the admission of statements made during a 911 call. In *Davis,* the victim called 911 to report a domestic altercation with her ex-boyfriend. *Id.,* 547 U.S. at 817, 126 S.Ct. at 2270–71. During the call, the victim identified the defendant as her attacker and described the specifics of the ongoing assault in response to questions by the 911 operator. *Id.,* 547 U.S. at 817–18, 126 S.Ct. at 2271. The trial court allowed the recording of the 911 call to be admitted into evidence despite the fact that the victim did not testify at trial. *Id.,* 547 U.S. at 822, 126 S.Ct. at 2273–74. In finding the recordings to be nontestimonial in nature, and therefore admissible, the Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.*

The Court reasoned that the statements were nontestimonial because "[a] 911 call, . . . at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2276. The Court noted that the victim was "speaking about events as they were actually happening, rather than 'describ[ing] past events'" and that, "[a]lthough one might call 911 to provide a narrative report of a crime absent any imminent danger, [the victim's] call was plainly a call for help against bona fide physical threat. *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276. The Court also reasoned that the nature of the questions posed by the 911 operator indicated that the purpose of the interrogation was to "resolve the present emergency, rather than simply to learn . . . what had happened in the past." *Id.* Finally, the Court reasoned that the fact that the victim's answers were frantic and provided over the phone, in an environment that was not tranquil, or even . . . safe" indicated that the statements were nontestimonial. *Id.,* 547 U.S. at 827, 126 S.Ct. at 2276–77. *See also, Michigan v. Bryant,* —— U.S. ——, 131 S.Ct. 1143, 1157, 179 L.Ed.2d 93 (2011).

In the present case, Mr. Thomas gave his statement to Officer Bowens several days after the beating of the victim. The statement was given on March 23, 2016, seven days after the incidents in question. Thus, Mr. Thomas was not speaking about events as they were happening but was describing events that occurred several days beforehand. It is also clear that Officer Bowens's questions were posed to learn what happened in the past rather than to resolve a current emergency. We find Mr. Thomas's statement to Officer Bowens was testimonial and, thus, subject to the defendant's confrontation rights. Contrary to the state's argument, there is no such thing as an "even playing field" in a criminal trial. The burden lies wholly with the state to prove every element of an offense charged. The Sixth Amendment to the United States Constitution specifically provides that the defendant has the right "to be confronted with the witnesses against him[.]" The state's lack of opportunity to question a witness is irrelevant and does not excuse the violation of the defendant's constitutional right to confront his accusers. The trial court erred in admitting the statement without the defendant having an opportunity to cross-examine Mr. Thomas.

As both the defendant and the state acknowledge in their briefs, a harmless error analysis is appropriate when evidence is introduced at trial in violation of the defendant's confrontation rights.

> An error in the defendant's right to confrontation is subject to a harmless error analysis. If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt. In determining whether the guilty verdict rendered was unattributable to the error the following factors should be considered: 1) whether the witness' testimony was important; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case.

*Williams*, 889 So.2d at 1102.

The sufficiency of the evidence is not challenged on appeal. After a review of the record, we find the erroneous introduction of Mr. Thomas's statement was not

harmless error. Mr. Thomas's statement was important since it was essential to proving the elements of the charges against the defendant.

Aggravated second degree battery is defined at La.R.S. 14:34.7 as "a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury." "[S]pecific intent to kill is required to support an attempted second degree murder conviction." *State v. Spriggins*, 13-1114, p. 3 (La.App. 3 Cir. 4/2/14), 135 So.3d 1252, 1254, *citing State v. Butler*, 322 So.2d 189 (La.1975). The state relied on Mr. Thomas's statement to prove the dangerous weapon element of aggravated degree battery and the specific intent to kill element of attempted second degree murder.

As the state points out in its brief, the victim identified the defendant as her attacker, and the defendant admitted to battering the victim. Thus, the defendant's identity was proven by other evidence. Additionally, the medical testimony regarding the severity of the victim's injuries is arguably sufficient to prove the defendant's specific intent to kill (attempted second degree murder) and the defendant's specific intent to inflict serious bodily injury (aggravated second degree battery and second degree battery). However, as the defendant points out in his brief, Mr. Thomas's statement was the only evidence as to the dangerous weapon element of the two counts of aggravated second degree battery, both of which specify the barbecue pit as the dangerous weapon used. The necessity of Mr. Thomas's statement is evident in the following colloquy between the state and Officer Bowens:

Q: Okay. Okay, so according to Mr. Thomas' statement, Mr. Batiste hit Ms. Mason with the lid of a barbecue grill and a crate. Correct?

A: Correct.

Q: And according to Mr. Batiste own [sic] statement, in addition not only did he hit her multiple times, he pushes her down, right, and her head is close to the stairs, right? And the steps are made of what?

A: Concrete.

Although Mr. Batiste admitted that he hit the victim several times, Mr. Batiste did not admit to using the dangerous weapons necessary to prove the two counts of aggravated second degree battery. Mr. Thomas's statement is the only evidence presented by the state that a dangerous weapon was used. Further, the state extensively quotes the inadmissible statement in its closing argument as evidence of the defendant's intent to kill the victim. Thus, Mr. Thomas's statement was essential to the state's case on the charge of attempted second degree murder. The wrongly admitted evidence, therefore, was clearly prejudicial evidence which tainted the process as to all charges.

For the foregoing reasons, we find the introduction of Mr. Thomas's statement violated the defendant's constitutional right to confront his accusers and created reversible error. Accordingly, the trial court's ruling allowing introduction of the evidence is reversed, defendant's convictions and sentences are vacated and the case is remanded for a new trial. This ruling renders both Assignments of Error Three and Four moot.

## CONCLUSION

The defendant's convictions and sentences are vacated and the case remanded for a new trial.

**REVERSED; CONVICTIONS AND SENTENCES VACATED; AND REMANDED FOR A NEW TRIAL.**