# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-318

**STATE OF LOUISIANA**

**VERSUS**

**ROBERT MARQUEZ WILSON**

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 112303-F
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and Candyce G. Perret, Judges.

**REVERSED AND REMANDED.**

**Paula Corley Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana 70598-2389**
**(337) 991-9757**
**Counsel for Defendant/Appellant:**
**Robert Marquez Wilson**

**Trent Brignac**
**District Attorney**
**Post Office Drawer 780**
**Ville Platte, Louisiana 70586**
**(337) 363-3438**
**Counsel for Appellee:**
**State of Louisiana**

**Jeffrey M. Landry**
**Attorney General**
**Colin Clark**
**J. Taylor Gray**
**Assistant Attorney General**
**Post Office Box 94005**
**Baton Rouge, Louisiana  70804**
**(225) 326-6200**
**Counsel For Appellee:**
       **State of Louisiana**

**KEATY, Judge.**

Defendant appeals his conviction and sentence. For the following reasons, Defendant's conviction is reversed, his sentence is vacated, and this matter is remanded for a new trial.

## FACTS & PROCEDURAL BACKGROUND

This matter involves a shooting that occurred in Ville Platte on April 23, 2017. Prior to the shooting, there was an altercation between Defendant, Robert Marquez Wilson, and Santiago Thomas. After the shooting, Santiago found a bullet that had pierced the back of his car. A bystander, Kathy Weston, was also shot and killed. On April 11, 2018, Defendant was indicted for second degree murder, a violation of La.R.S. 14:30.1. The State charged Defendant with other offenses by bill of information although the trial court ordered these to be severed from the murder charge on October 1, 2018. On that same day, a jury was selected, and trial commenced one day later. On October 5, 2018, the jury returned a responsive verdict finding Defendant guilty of manslaughter, a violation of La.R.S. 14:31. On January 17, 2019, Defendant was sentenced to twenty-five years at hard labor. Defendant appealed.

On appeal, Defendant asserts the following three errors:

1. The trial court erred in its denial of Robert Marquez Wilson's right to confront and cross-examine two witnesses for the State. The court abused its discretion in weighing the out of court statements for credibility as a test to carve out an exception to the confrontation clause.

2. The State failed to prove Robert Marquez Wilson fired the shot that resulted in the death of Kathy Weston, thus the State failed to prove beyond a reasonable doubt that Robert Marquez Wilson was guilty of manslaughter.

3. A. Louisiana's constitution and statutory provisions allowing a conviction with a verdict of less than all twelve jurors violate the Equal Protection Clause of the United States Constitution. The 1898 Constitution of Louisiana was written "to establish the supremacy of the white race in this State." As racism was a substantial or motivating

factor behind the enactment of the laws allowing non-unanimous jury verdicts, those provisions violate the Equal Protection Clause.

      B. Considering the sixth amendment right to a jury trial applies in state criminal courts, the right to a unanimous jury verdict should also apply in a state criminal court trial.

## DISCUSSION

### I.    Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

### II.    Second Assignment of Error

We will address Defendant's second assignment of error first because it alleges the evidence at trial was insufficient to support the conviction. Such arguments must be addressed before others because a finding of insufficient evidence would result in Defendant's acquittal. *State v. Hearold*, 603 So.2d 731 (La.1992).

> Sufficiency questions are analyzed as follows:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant alleges the State's witnesses were not credible in contrast to his witnesses, whom he asserts were credible. Defendant's trial testimony along with the testimony of his brother, Tieberrious Wilson, Ladonna Holmes, Ebony Soileau, and Shawn Thomas, indicate that Defendant was indoors when they heard shots fired. Defendant suggests the jury's conclusions were not rational while also acknowledging that appellate courts will not second-guess a fact finder's credibility determinations. Defendant contends that because his identity as the shooter was an issue at trial, the State was required to negate any reasonable probability of misidentification. *State v. Draughn*, 05-1825 (La. 1/17/07), 950 So.2d 583, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007).

Defendant notes the inconsistencies within and among the testimonies of the State's witnesses. Specifically, he points to Nakaya Joseph's prior statement that Santiago also fired his weapon. According to Defendant, Joseph's story changed at trial where she denied that Santiago fired any shots and admitted to lying in her previous statement because she was told to do so by Jaquincy Jack, also known as "Mule." Defendant further alleges that Jalen Hill was motivated to help the State because multiple charges were pending against him. Defendant explains that Hill provided two prior statements where he did not implicate Defendant with the shooting at issue. According to Defendant, Hill provided a third statement after charges were filed against him, i.e., Hill. Defendant notes that in this third statement, Hill indicated that he handed a weapon to Defendant, who then began shooting.

On review, the trial court was presented with the testimony of Santiago Thomas. According to Santiago, he was driving his car in Ville Platte on the night of April 23, 2017, when he saw Defendant and Defendant's brother, Tieberrious Wilson, standing near a stop sign. Santiago testified that an object hit his car, which caused him to exit his car and get into an argument with Defendant and Tieberrious.

3

Santiago returned to his car and drove away when he heard gunshots. Santiago testified that he proceeded to his cousin's house later that evening where Defendant also ended up. Once again, an altercation or a fight ensued between Defendant and Santiago, according to his testimony. Thereafter, Santiago testified that his girlfriend called him and instructed him to go to the hospital where police were waiting to question him. According to Santiago, it was at the hospital where he realized the back of his car contained a bullet hole. Evidence in the record reveals that a bullet struck one of Santiago's taillights, passed through the trunk and back seat, and ended in his center console. Santiago testified that it was also at the hospital where he learned that Weston, a bystander at the shooting scene, was dead. Medical testimony in the record reveals that Weston's death was caused by a bullet which passed through her aorta.

The trial court was also presented with the testimony from a juvenile, Jalen Hill, also known as "Speedy." Hill testified that he witnessed an argument between Defendant and Santiago. Hill stated that as Santiago drove away, Defendant asked him for a weapon. Hill acknowledged that he gave Defendant a Smith & Wesson gun, after which Santiago had "spun the block" and "came back." Hill testified that he took off running because he heard some shots coming from the parking lot. According to Hill, he retrieved the gun from Defendant later that day and subsequently sold it in Opelousas. Hill identified the gun as a Smith & Wesson nine-millimeter gun.

According to the record, investigators were unable to recover the murder weapon. Evidence and testimony reveal, however, that nine-millimeter bullets fired from a Smith & Wesson gun were recovered from both Weston's body and Santiago's car. Although testing did not conclusively establish the bullets were fired

4

from the same weapon, casings found at the scene matched the same weapon, an unidentified nine-millimeter Smith & Wesson firearm.

Joseph's testimony reveals that she was walking to the store when she saw Defendant and Santiago arguing. Joseph testified that she witnessed Hill, i.e., "Speedy," hand a gun to Defendant, who then shot towards the store which was in the same direction as Santiago and his car. Joseph testified that she also saw Weston going to the store. According to the trial testimony of patrol officer Evan Lacross, he found Weston bleeding on the ground near the store. Officer Jordan Veillon testified that the hospital subsequently pronounced Weston had died.

Testimony also reveals that investigators obtained information from an inmate informant, Alshamir McKoy, that Defendant shot towards Santiago and Weston. McKoy later refused to testify at trial. Similar information was provided to investigators by a confidential informant. Based upon information received from confidential informant and McKoy, investigators interviewed a juvenile, Jaquincy Jack, also known as "Mule." Jack initially denied any knowledge of the incident and refused to testify at trial. However, Jack had provided a statement on March 14, 2018, indicating that Hill gave a gun to Defendant who shot at Santiago's car. Jack and McKoy's statements were allowed into the evidence at trial over Defendant's objection.

On review, we note that this court will re-assess credibility in certain circumstances:

> As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and [the defendant's] brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See,*

5

*e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, pp. 4-5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

In this case, the jury believed the State's version of events, and Defendant's brief offers no reason why the jury's conclusion should be considered unreasonable. It was not unreasonable, based upon the testimony and evidence, which reveal that Joseph saw Defendant shoot the gun. Joseph's testimony was mostly corroborated by Hill's testimony even though he did not see Defendant fire the weapon. Thus, it was not irrational for the trial court to find Joseph and Hill's testimony credible. Other evidence and testimony further support the trial court's conclusion. Defendant, therefore, has failed to establish that the jury's credibility determinations were irrational, and this assignment of error lacks merit.

## III.    First Assignment of Error

In his first assignment of error, Defendant contends the trial court erred in its denial of his right to confront and cross-examine two of the State's witnesses, McKoy and Jack. Defendant notes the State was allowed to present out-of-court statements by McKoy and Jack. According to Defendant, these potential witnesses refused to testify such that their statements were not subject to cross-examination. Defendant alleges that the trial court abused its discretion by weighing the out-of-court statements for credibility as a test to carve out an exception to the confrontation clause.

We note that Defendant failed to discuss jurisprudence, and the trial court's ruling was based on state statutes. It is clear from the record, however, that

6

Defendant raised the confrontation issue, and the trial court understood it as such.

The supreme court has addressed the confrontation clause as follows:

> Although the results of the IQ test were testimonial in nature and, therefore, inadmissible without the testimony of the technician who administered and graded the test, Defendant failed to object to any aspect of Dr. Vigen's testimony. Louisiana's contemporaneous objection rule provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." *State v. Ruiz*, 2006-1755 (La. 4/11/07), 955 So.2d 81, 87; La.Code Crim. Pro. art. 841 A. Because Defendant failed to contemporaneously object to Dr. Vigen's testimony as to the victim's IQ score, Defendant failed to preserve any error as to his testimony, whether as to hearsay or to confrontation.
>
> The same cannot be said, though, of the introduction of Dr. Vigen's letter containing the results of the IQ test. Defendant objected to the introduction of the letter both for its hearsay nature and because the people who administered and graded the test were not in court to testify, which fairly raises the Confrontation Clause issue.

*State v. Mullins*, 14-2260, 14-2310, pp. 8-9 (La. 1/27/16), 188 So.3d 164, 171.

The State does not disagree that a confrontation error may have occurred; rather, its main argument is that if any such error occurred, it was harmless. This court has explained:

> [A] harmless error analysis is appropriate when evidence is introduced at trial in violation of the defendant's confrontation rights.
>
> > An error in the defendant's right to confrontation is subject to a harmless error analysis. If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt. In determining whether the guilty verdict rendered was unattributable to the error the following factors should be considered: 1) whether the witness' testimony was important; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case.
>
> [*State v.*] *Williams*, [04-608 (La.App. 5 Cir. 11/30/04),] 889 So.2d [1093] at 1102.

*State v. Batiste*, 17-1099, p. 17 (La.App. 3 Cir. 5/9/18), 246 So.3d 52, 65.

The State opines that its case was strong as seen in the previous discussion and in the earlier recitation of facts. Although Joseph provided the only eyewitness testimony regarding Defendant's act of shooting, her testimony was mostly corroborated by Hill's testimony. There was also some corroboration in the form of the ballistics testimony, which revealed that Santiago's car and Weston were both shot with a Smith & Wesson nine-millimeter gun. Hill's testimony reveals that he provided a Smith & Wesson nine-millimeter gun to Defendant prior to the shooting at issue.

Whether the out-of-court statements were important or cumulative is difficult to assess. In light of the ballistics testimony along with Joseph's and Hill's testimony, we find this case could have withstood a sufficiency review without the use of McKoy and Jack's statements. However, our inquiry does not end here. The supreme court has explained:

> Writ granted in part. Defendant was found guilty of manslaughter in response to the charge of second degree murder, and sentenced to 20 years imprisonment at hard labor. The court of appeal affirmed. *State v. Eaglin*, 17-657 (La.App. 3 Cir. 3/28/18), 239 So.3d 1001. In affirming, a majority of the panel found the error in admitting a highly inflammatory photograph of defendant, which lacked any probative value, was harmless because the State introduced *sufficient evidence* to support the conviction. *See Eaglin*, 17-657, p. 40, 239 So.3d at 1027 ("There was consistent testimony regarding the fight that preceded the shooting that was sufficient to convict the defendant of manslaughter. The trial court's error in admitting the prejudicial photograph, Exhibit S-2, is, therefore harmless."). Judge Cooks, dissenting, noted that the majority applied the wrong standard in determining whether the error was harmless. The dissent is correct in that assessment. Under *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), an appellate court must decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," and "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24, 87 S.Ct. at 828. In applying the *Chapman* standard, "[t]he question, however, is not whether the legally admitted evidence was sufficient . . . , which we assume it was, but rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *See Satterwhite v. Texas*, 486 U.S. 249, 258-259, 108 S.Ct. 1792, 1798, 100

L.Ed.2d 284 (1988) (quoting *Chapman*). Because the court of appeal applied the wrong standard, we grant in part and remand to the court of appeal to determine whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. The application is otherwise denied.

*State v. Eaglin*, 18-822, pp. 1-2 (La. 3/18/19), 265 So.3d 761, 761-62.

In light of *Eaglin*, we find that McKoy's statement and Jack's statement, both of which directly identified Defendant as the shooter, were unduly influential and could have influenced the verdict. According to the record, both non-testifying witnesses were discussed in the State's closing at trial. We further note that in a majority opinion in *State v. Rubin*, 94-982 (La.App. 3 Cir. 2/8/95), 649 So.2d 1240, *writ denied*, 95-1135 (La. 10/13/95), 661 So.2d 494, this court reversed a murder conviction and ordered a new trial based upon a hearsay violation. The appellate court ruled that the error was not harmless partially because the State emphasized the improper evidence in its rebuttal. *Id.*

Accordingly, in this case, the use of the two out-of-court statements constituted a confrontation error which was not harmless. Defendant's conviction is reversed, his sentence is vacated, and the case is remanded for a new trial. In light of our ruling, we pretermit any discussion of Defendant's remaining assignment of error.

## DISPOSITION

For the reasons assigned above, the conviction of Robert Marquez Wilson is reversed, and his sentence is vacated and set aside. This case is remanded to the trial court for a new trial.

**REVERSED AND REMANDED.**